**COMMERCIAL DEED OF TRUST AND SECURITY AGREEMENT**
(With Assignment of Rents)

STATE OF NEW MEXICO }
COUNTY OF DONA ANA }

INTRODUCTION

BUENO TITLE # 180503792/BJM

This instrument ("<u>Deed of Trust</u>") is a deed of trust from:

Mortgagor Name(s): MELEDRES HOME, LLC, a Texas Limited Liability Company

Address: P. O. Box 220255
El Paso, TX 79913

(called the "<u>Mortgagor</u>", "<u>Debtor</u>" and "<u>Assignor</u>", whether one or more) to:

Trustee Name: Merwan N. Bhatti

Address: 100 N. Stanton, Suite 1000
El Paso, Texas 79901

as trustee (called the "<u>Trustee</u>"), for the use and benefit of:

Mortgagee Party Name(s): MDJJ REAL ESTATE, LLC, a Texas Limited Liability Company, whose address is

Address: P.O. Box 220255
El Paso, Texas 79913

(called the "<u>Mortgagee</u>", "<u>Secured Party</u>" and "<u>Assignee</u>"), a security agreement between Debtor and Secured Party and an assignment of rents from Assignor to Assignee, for the pro rata benefit of Mortgagee.

*We hereby certify that the foregoing is a true and correct copy of the original.*

W I T N E S S E T H :

**ARTICLE I
IDENTIFICATION OF THE MORTGAGED PROPERTY
AND ITS CONVEYANCE TO THE TRUSTEE**

Section 1.1 <u>Mortgagor's Conveyance of the Mortgaged Property to the Trustee to Secure the Debt</u>. To secure payment of principal, lawful interest and other elements of the Debt described and defined in <u>Article 2</u>, in consideration of the uses and trusts (the "<u>Trust</u>") established and continued by this Deed of Trust and for valuable consideration given before delivery of this Deed of Trust by each of Trustee and Mortgagee to Mortgagor, who hereby acknowledges its receipt and that it is reasonably equivalent value for this Deed of Trust and all other security and rights given by Mortgagor, Mortgagor hereby Grants, Sells, Conveys, Transfers, Assigns, Sets Over, Confirms and Delivers unto the Trustee and to his successors or substitutes in the Trust, in trust with power of sale, for the benefit of Mortgagee, the following property (collectively, the "<u>Mortgaged Property</u>"):

(a) Real Property. All of the real estate and premises described or referred to on <u>Exhibit A</u>, together with (i) all of Mortgagor's estate, right, title and interest in and to all easements and rights-of-way for utilities, ingress or egress to or form said property and (ii) all interests of Mortgagor in and to all streets, rights-of-way, alleys or strips of land adjoining said property (collectively, the "<u>Real Property</u>").

(b) Buildings and Improvements. All existing and all future buildings on the Real Property and other improvements to it, all of which Mortgagor hereby irrevocably declares to be real estate and part of the Real Property, including all water, sewage and drainage facilities, wells, treatment plants, supply, collection and distribution systems, paving, landscaping and other improvements (collectively, the "<u>Improvements</u>").

(c) Fixtures, Equipment and Supplies. All fixtures, equipment and supplies (the "<u>Fixtures and Equipment</u>") now or hereafter attached to, used, intended or acquired for use for, or in connection with, the construction, maintenance, operation or repair of the Real Property or Improvements, or for the present or future replacement or replenishment of used portions of it, and all related parts, filters and supplies, including, but not limited to, all heating, lighting, cooling, ventilating, air conditioning, environmental control, refrigeration, plumbing, incinerating, water-heating, cooking, pollution control, gas, electric, solar, nuclear, computing, monitoring, measuring, controlling, distributing and other equipment and fixtures, and all renewals and replacements of them, all substitutions for them and all additions and accessions to them, all of which Mortgagor hereby also irrevocably declare to be real estate and part of the Real Property.

(d) Leases. All Leases (as such term is defined in <u>Section 8.1</u> below).

(e) Utilities. All wastewater, fresh water and other utilities capacity and facilities (the "<u>Utilities Capacity</u>") available or allocable to the Real Property and Improvements or dedicated to or reserved for them pursuant to any system, program, contract or other arrangement with any public or private utility, and all related or incidental licenses, rights and interests, whether considered to be real, personal or mixed property, including the right and authority to transfer or relinquish any and all such rights and the right to any credit, refund, reimbursement or rebate for utilities facilities construction or installation or for any reservation fee, standby fee or capital recovery charge promised, provided or paid for by Mortgagor or any of Mortgagor's predecessors or Affiliates (defined below), to the full extent now allocated or allocable to the Real Property or Improvements, plus all additional Utilities Capacity, if any, not dedicated or reserved to the Real Property or Improvements but which is now or hereafter owned or controlled by Mortgagor or by anyone (an "<u>Affiliate</u>", whether a natural person or an entity) who directly or through one or more intermediaries controls, is controlled by or is under common control with Mortgagor, to the full extent that such additional Utilities Capacity is necessary to allow development, marketing and use of the Real Property or Improvements for their highest and best use.

- 11 -

(f) **After-acquired Property.** All estate, right, title and interest acquired by Mortgagor in or to the Real Property, Improvements, Fixtures and Equipment, Leases and Utilities Capacity after execution of this Deed of Trust.

(g) **Appurtenances.** Any and all rights and appurtenances (the "Appurtenances") belonging, incident or appertaining to the Real Property, Improvements, Fixtures and Equipment, Leases or Utilities Capacity or any part of them.

(h) **Oil and Gas.** All existing and future minerals, oil, gas and other hydrocarbon substances in, upon, under or through the Real Property.

(i) **Reversions and Remainders.** Any and all rights and estates in reversion or remainder to the Real Property, Improvements, Fixtures and Equipment, Leases, Utilities Capacity or Appurtenances or any part of them.

(j) **Contractual Rights.** All contracts (including contacts for the sale or exchange of all or any portion of the Real Property or the Improvements), franchises, licenses and permits whether executed, granted or issued by a private person or entity or a governmental or quasi-governmental agency, which are directly or indirectly related to or connected with the development or sale of the Real Property of the Improvements, whether now or at any time hereafter existing, and all amendments and supplements thereto and renewals and extensions thereof at any time made, and all rebates, refunds, escrow accounts and funds, or deposits and all other sums due or to become due under and pursuant thereto and all powers, privileges, options and Mortgagor's other benefits thereunder.

(k) **Other Estates and Interests.** All other estates, easements, interests, licenses, rights, titles, powers or privileges of every kind and character which Mortgagor now has, or at any time hereafter acquires, in and to any of the foregoing, including the proceeds from condemnation, or threatened condemnation, and the proceeds of any and all insurance covering any part of the foregoing; and all related parts, accessions and accessories to any of the foregoing and all replacements or substitutions therefor, as well as all other Improvements, Fixtures and Equipment, Leases, Utilities Capacity and Appurtenances now or hereafter placed thereon or accruing thereto.

Mortgagor expressly subjects the Mortgaged Property to the terms of the New Mexico Deed of Trust Act, § 48-10-1 to § 48-10-21 NMSA 1978 (1987 Repl.), as amended (the "New Mexico Deed of Trust Act").

Section 1.2 **Habendum and Title Warranty.** TO HAVE AND TO HOLD the Mortgaged Property, together with every right, privilege, hereditament and appurtenance belonging or appertaining to it, unto the Trustee, his successors or substitutes in the Trust and his or their assigns, forever. Mortgagor represents that Mortgagor is the lawful owner of the Mortgaged Property with good right and authority to mortgage and convey it, and that the Mortgaged Property is free and clear of all liens, claims and encumbrances except only those expressly referred to or described in Exhibit B. Mortgagor hereby binds Mortgagor and Mortgagor's successors or substitutes in the Trust, and his or their assigns, against the claims and demands of every person whomsoever lawfully claiming or to claim it or any part of it (such warranty to supersede any provision contained in this Deed of Trust limiting the liability of Mortgagor).

## ARTICLE 2
## THE DEBT SECURED

Section 2.1 **Conveyance in Trust to Secure Designated Obligations.** This conveyance to the Trustee is in trust to secure all of the following present and future debt and obligations (collectively, the "Debt"):

(a) All indebtedness now or hereafter evidenced and to be evidenced by (i) Term Notes executed by Mortgagor payable to the order of the Mortgagee, and (ii) any and all past, concurrent or future modifications, extensions, renewals, rearrangements, replacements and increases of the Notes or the Term Notes.

(b) All obligations and indebtedness of Mortgagor now or hereafter created or incurred under the Note.

(c) All other present and future debts and obligations under or pursuant to any papers now or in the future governing, evidencing, guaranteeing, or securing or otherwise relating to payment of all or any part of the debt evidenced by the Note.

(d) All other obligations of Mortgagor, if any, described or referred to in any other place in this Agreement; and

(e) All supplements, amendments, restatements, renewals, extensions, rearrangements, increases, expansions or replacements of any of the foregoing.

The Debt includes interest and other obligations accruing or arising after (a) commencement of any case under any bankruptcy or similar laws by or against Debtor or any other person or entity now or hereafter primarily or secondarily obligated to pay all or any part of the Debt (Debtor and each such other person or entity being herein called an "Obligor") or (b) the obligations of any Obligor shall cease to exist by operation of law or for any other reason. The Debt also includes all reasonable attorneys' fees and any other expenses incurred by Secured Party or any Mortgagee in enforcing any of the Documents (as defined in the Loan Agreement).

The maximum amount secured by the lien of this Deed of Trust shall not exceed, at any one time, *ONE HUNDRED EIGHTY EIGHT THOUSAND AND NO/100 DOLLARS ($188,000.00)*.

## ARTICLE 3
## SECURITY AGREEMENT

Section 3.1 **Grant of Security Interest.** Without limiting any of the provisions of this Deed of Trust, Mortgagor, as Debtor, and referred to in this Article as "Debtor" (whether one or more) hereby grants to Mortgagee, as Secured Party, and referred to in this Article as "Secured Party", a security interest in all of Debtor's remedies, powers, privileges, rights, titles and interests (including all of Debtor's power, if any, to pass greater title than it has itself) of every kind and character now owned or hereafter acquired, created or arising in and to (i) the Mortgaged Property (including both that now and that hereafter existing) to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code of the state or states where the Mortgaged Property is situated (the "UCC"), (ii) all equipment, accounts, general intangibles, fixtures, inventory, chattel paper, notes, documents and other personal property used, intended or acquired for use, on, or in connection with the use or operation of, the Mortgaged Property, or otherwise related to the Mortgaged Property, and all products and proceeds of it, including all Rental (as such term is defined in Section 8.1 below) and all security deposits under Leases now or at any time hereafter held by or for Debtor's benefit, all monetary deposits which Debtor has been required to give to any public or private utility with respect to utility services furnished to the Mortgaged Property, all funds, accounts, instruments, accounts receivable, documents, trademarks, trade names and symbols used in connection therewith, and notes or chattel paper arising from or by virtue of any transactions related to the Mortgaged property, and all guaranties and warranties obtained with respect to all improvements, equipment, furniture, furnishings, personal property and components of any thereof located on or installed at the Mortgaged Property and (iii) the following described property:

(a) **Contracts.** All contracts now or hereafter entered into by and between Debtor and any Original Contractor (as such term is defined in § 48-2-17 NMSA 1978 (1987 Repl.), as amended) or between Debtor and any other party, as well as all right, title and interest of Debtor under any subcontracts, providing for the construction (original, restorative or otherwise) of any improvements to or on any of the Mortgaged Property or the furnishing of any materials, supplies, equipment or labor in connection with any such construction.

(b) **Plans.** All of the plans, specifications and drawings (including plot plans, foundation plans, floor plans, elevations, framing plans, cross-sections of walls, mechanical plans, electrical plans and architectural and engineering plans and architectural and engineering studies and analyses) heretofore or hereafter prepared by any architect, engineer or other design professional, in respect of any of the Mortgaged Property.

(c) **Design, etc. Agreements.** All agreements now or hereafter entered into any person or entity in respect of architectural, engineering, design, management, development or consulting services rendered or to be rendered in respect of planning, design, inspection or supervision of the construction, management or development of any of the Mortgaged Property.

(d) **Bonds.** Any completion bond, performance bond and labor and material payment bond and any other bond relating to the Mortgaged Property or to any contract providing for construction of improvements to any of the Mortgaged Property.

together with all substitutions for and proceeds of any of the foregoing received upon the rental, sale, exchange, transfer, collection or other disposition or substitution of it and together with all general intangibles now owned by Debtor or existing or hereafter acquired, created or arising (whether or not related to any of the foregoing Property). All the property described or referred to in this Section 3.1 is collectively referred to as the "<u>Collateral</u>". The Mortgaged Property is collectively referred to as the "<u>Property</u>". In the event of any express inconsistency between the provisions of this Section and Article 9 regarding any Rental or Lease, the provisions of Article 9, to the extent valid, enforceable and in effect, shall govern and control.

Section 3.2 <u>Debtor's Covenants Concerning Personalty Subject to the UCC</u>. Debtor covenants and agrees that in addition to and cumulative of any other remedies granted in this Deed of Trust to Secured Party, any Mortgagee or the Trustee, upon or at any time after the occurrence of an Event of Default (defined in Article 6):

(a) Secured Party is authorized, in any legal manner and without breach of the peace, to take possession of the Collateral (Debtor hereby WAIVING all claims for damages arising from or connected with any such taking) and of all books, records and accounts relating thereto and to exercise without interference from Debtor any and all rights which Debtor has with respect to the management, possession, operation, protection or preservation of the Collateral, including the right to sell or rent the same for the account of Debtor and to deduct from such sale proceeds or such rents all costs, expenses and liabilities of every character incurred by Secured Party in collecting such sale proceeds or such rents and in managing, operating, maintaining, protecting or preserving the Collateral and to apply the remainder of such sales proceeds or such rents on the Debt in such manner as the Mortgagee may elect. Before any sale, Secured Party may, at its option, complete the processing of any of the Collateral and/or repair or recondition the same to such extent as it may deem advisable and any sums expended therefor by Secured Party shall be reimbursed by Debtor. Secured Party may take possession of Debtor's premises to complete such processing, repairing and/or reconditioning, using the facilities and other property to Debtor to do so, to store any Collateral and to conduct any sale as provided for herein, all without compensation to Debtor. All costs, expenses, and liabilities incurred by Secured Party in collecting such sales proceeds or such rents, or in managing, operating, maintaining, protecting or preserving such properties, or in processing, repairing and/or reconditioning the Collateral if not paid out of such sales proceeds or such rents as hereinabove provided, shall constitute a demand obligation owing by Debtor and shall bear interest from the date of expenditure until paid at the Past Due Rate, all of which shall constitute a portion of the Debt. If necessary to obtain the possession provided for above, Secured Party may invoke any and all legal remedies to dispossess Debtor, including specifically one or more actions for forcible entry and detainer. In connection with any action taken by Secured Party pursuant to this Section, Secured Party shall not be liable for any loss sustained by Debtor resulting from any failure to sell or let the Collateral, or any part thereof, or from other act or omission of Secured Party with respect to the Collateral unless such loss is caused by the willful misconduct and bad faith of Secured Party, nor shall Secured party be obligated to perform or discharge any obligation, duty, or liability under any sale or lease agreement covering the Collateral or any part thereof or under or by reason of this instrument or the exercise of rights or remedies hereunder.

(b) Secured Party may, without notice except as hereinafter provided, sell the Collateral or any part thereof at public or private sale (with or without appraisal or having the Collateral at the place of sale) for cash, upon credit, or for future delivery, and at such price or prices as it may deem best, and Secured Party or any Mortgagee may be the purchaser of any and all of the Collateral so sold and thereafter hold the same absolutely free from any right or claim of whatsoever kind. In any such public or private sale, Mortgagee may bid an amount to be applied as a credit against its Note. Upon any such sale Secured Party shall have the right to deliver, assign and transfer to the purchaser thereof the Collateral so sold. Each purchaser at any such sale shall hold the property sold absolutely free from any claim or right of whatsoever kind, including any equity or right of redemption, stay or appraisal which Debtor has or may have under any rule of law or statute now existing or hereafter adopted. To the extent notice is required by applicable law, Secured Party shall give Debtor written notice at the address set forth herein (which shall satisfy any requirement of notice or reasonable notice in any applicable statute) of the intention of make any such public or private sale. Such notice (if any is required by applicable law) shall be personally delivered or mailed, postage prepaid, at least ten (10) calendar days before the date fixed for a public sale, or at least ten (10) calendar days before the date after which the private sale or other disposition is to be made, unless the Collateral is of a type customarily sold on a recognized market, is perishable or threatens to decline speedily in value. Such notice (if any is required by applicable law), in case of public sale, shall state the time and place fixed for such sale or, in case of private sale or other disposition other than a public sale, the time after which the private sale or other such disposition is to be made. Any public sale shall be held at such time or times, within the ordinary business hours and at such place or places, as Secured Party may fix in the notice of such sale. At any sale the Collateral may be sold in one lot as an entirety to in separate parcels as Secured Party may determine. Secured Party shall not be obligated to make any sale pursuant to any such notice. Secured Party may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at any time and place fixed for the sale, and such sale may be made at any time or place to which the same may be so adjourned. In case of any sale of all or any part of the Collateral on credit or for future delivery, the Collateral so sold may be retained by Secured Party until the selling price is paid by the purchaser thereof, but Secured Party shall incur no liability in case of the failure of such purchaser to take up any pay for the Collateral so sold, and in case of any such failure, such Collateral may again be sold upon like notice. Each and every method of disposition described in this Section shall constitute disposition in a commercially reasonable manner. Each Obligor, to the extent applicable, shall remain liable for any deficiency.

(c) Secured Party shall have all the rights of a secured party after default under the Uniform Commercial Code of New Mexico and in conjunction with, in addition to or in substitution for those rights and remedies:

(i) Secured Party may require Debtor to assemble the Collateral and make it available at a place Secured Party designates which is mutually convenient to allow Secured Party to take possession or dispose of the Collateral; and

(ii) it shall not be necessary that Secured Party take possession of the Collateral or any part thereof before the time that any sale pursuant to the provisions of this Article is conducted and it shall not be necessary that the Collateral or any part thereof be present at the location of such sale; and

- 13 -

(iii) before application of proceeds of disposition of the Collateral to the Debt, such proceeds shall be applied to the reasonable expenses of retaking, holding, preparing or sale or lease, selling, leading and the like and the reasonable attorneys' fees and legal expenses incurred by Secured Party, each Obligor, to the extent applicable, to remain liable for any deficiency; and

(iv) the sale by Secured Party of less than the whole of the Collateral shall not exhaust the rights of Secured Party hereunder, and Secured Party is specifically empowered to make a successive sale or sales hereunder until the whole of the Collateral shall be sold; and, if the proceeds of such sale of less than the whole of the Collateral shall be less than the aggregate of the indebtedness secured hereby, this Deed of Trust and the security interest created hereby shall remain in full and effect as to the unsold portion of the Collateral just as though no sale had been made; and

(v) in the event any sale hereunder is not completed or is defective in the opinion of Secured Party, such sale shall not exhaust the rights of Secured Party hereunder and Secured Party shall have the right to cause a subsequent sale or sales to be made hereunder; and

(vi) any and all statements of fact or other recitals made in any bill of sale or assignment or other instrument evidencing any foreclosure sale hereunder as to nonpayment of any indebtedness or as to the occurrence of any default, or as to Secured Party having declared all of such indebtedness to be due and payable, or as to notice of time, place and terms of sale and the Collateral to be sold having been duly given, as to any other act or thing having been duly done by Secured Party, shall be taken as prima facie evidence of the truth of the facts so stated and recited; and

(vii) Secured Party may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Secured Party, including the sending of notices and the conduct of sale, but in the name and on behalf of Secured Party; and

(viii) demand of performance, advertisement and presentment of property at sale are hereby WAIVED and Secured Party is hereby authorized to sell hereunder any evidence of debt it may hold as security for the secured indebtedness. All demands and presentments of any kind or nature are expressly WAIVED by Debtor. Debtor WAIVES the right to require Secured Party or any Mortgagee to pursue any other remedy for the benefit of Debtor and agrees that Secured Party or any Mortgagee may proceed against any Obligor for the amount of the Debt without taking any action against any other Obligor or any other person or entity and without selling or otherwise proceeding against or applying any of the Collateral in Secured Party's possession.

Section 3.3 **UCC Rights are not Exclusive**. Should Secured Party elect to exercise its rights under the UCC as to part of the personal property or fixtures described in this Deed of Trust, such election shall not preclude Secured Party or the Trustee from exercising any or all of the rights and remedies granted by the other Articles of this Deed of Trust as to the remaining personal property or fixtures.

Section 3.4 **Deed of Trust is Also Financing Statement**. Secured Party may, at its election, at any time after delivery of this Deed of Trust, file an original of this Deed of Trust as a financing statement or sign one or more copies of this Deed of Trust to use as a UCC financing statement. Secured Party's signature may be placed between the last sentence of this Deed of Trust and Debtor's acknowledgment or may follow Debtor's acknowledgment. Secured Party's signature need not be acknowledged and is not necessary to the effectiveness of this Deed of Trust as a deed of trust, mortgage, assignment, pledge, security agreement or (unless otherwise required by applicable law) as a financing statement.

Section 3.5 **No other Financing Statements on the Collateral**. So long as any amount remains unpaid on the Debt, Debtor will not execute and there will not be filed in any public office any financing statements affecting the Collateral other than financing statements in favor of Secured Party, unless prior written specific consent and approval of the Mortgagee shall have been first obtained.

Section 3.6 **Secured Party May File Financing and Continuation Statements**. Secured Party is authorized to file this Deed of Trust, a financing statement or statements and one or more continuation statements in any jurisdiction where Secured Party deems it necessary, and at Secured Party's request, Debtor will join Secured Party in executing one or more financing statements, continuation statements or both pursuant to the UCC, in form satisfactory to Secured Party, and will pay the costs of filing or recording this Deed of Trust, any financing statement or any continuation statement is deemed by Secured Party or its counsel to be necessary or desirable.

Section 3.7 **Fixtures**. Certain of the Collateral is or will become "fixtures" (as that term is defined in the UCC) on the Real Property, and when this Deed of Trust is filed for record in the real estate records of the county where such fixtures are situated, it shall also automatically operate as a financing statement upon such of the Collateral which is or may become fixtures.

Section 3.8 **Assignment of Non-UCC Personal Property**. To the extent that any of the Collateral is not subject to the UCC of the state or states where it is situated, Debtor hereby assigns to Secured Party for the pro rata benefit of Mortgagee all of Debtor's right, title and interest in the Collateral to secure the Debt. Release of the lien of this Deed of Trust shall automatically terminate this assignment.

Section 3.9 **Debtor's Warranties Concerning Collateral**. Debtor warrants and represents to Secured Party that Debtor is the legal and equitable owner and holder of the Collateral free of any adverse claim and free of any security interest or encumbrance except only for the security interest granted hereby in the Collateral and those other security interests (if any) expressly referred to or described in this Deed of Trust (such warranty to supersede any provision contained in this Deed of Trust limiting the liability of Mortgagor). Debtor agrees to defend the Collateral and its proceeds against all claims and demands of any person at any time claiming the Collateral, its proceeds or any interest in either. Debtor also warrants and represents that Debtor has not heretofore signed any financing statement directly or indirectly affecting the Collateral or any part of it which has not been completely terminated of record, and no such financing statement signed by Debtor is now on file in any public office except only those statements (if any) true and correct copies of which Debtor has actually delivered to Secured Party.

Section 3.10 **Certain Powers of Secured Party**. Debtor hereby authorizes and directs each account debtor and each other person or entity obligated to make payment in respect of any of the Collateral (each a "Collateral Obligor") to pay over to Secured Party, its officers, agents or assigns, upon demand by Secured Party, all or any part of the Collateral without making any inquiries as to the status or balance of the secured indebtedness and without any notice to or further consent of Debtor. Debtor hereby agrees to indemnify each Collateral Obligor and hold each Collateral Obligor harmless from all expenses and losses which it may incur or suffer as a result of any payment it makes to Secured Party pursuant to this paragraph. To facilitate the rights of Secured Party hereunder, Debtor hereby authorizes Secured Party, its officers, employees, agents or assigns:

(a) to notify Collateral Obligors of Secured Party's security interest in the Collateral and to collect all or any part of the Collateral without further notice to or further consent by Debtor, and Debtor hereby constitutes and appoints Secured Party the true and lawful attorney of Debtor (such agency being coupled with an interest), irrevocably, with power of substitution, in the name of Debtor or in its own name or otherwise, to take any of the actions described in the following clauses (b), (c), (d), (e), (f) and (g);

(b) to ask, demand, collect, receive, receipt for, sue for, compound and give acquittance for any and all amounts which may be or become due or payable under the Collateral and to settle and/or adjust all disputes and/or claims directly with any Collateral Obligor and to compromise, extend the time for payment, arrange for payment in installments, otherwise modify the terms of, or release, any of the Collateral, on such terms and conditions as Secured Party may determine (without thereby incurring responsibility to or discharging or otherwise affecting the liability of Debtor to Secured Party or any Mortgagee under this Deed of Trust or otherwise);

(c) to direct delivery of, receive, open and dispose of all mail addressed to Debtor and to execute, sign, endorse, transfer and deliver (in the name of Debtor or in its own name or otherwise) any and all receipts or other orders for the payment of money drawn on the Collateral and all notes, acceptances, commercial paper, drafts, checks, money orders and other instruments given in payment or in part payment thereof and all invoices, freight and express bills and bills of lading, storage receipts, warehouse receipts and other instruments and documents in respect of any of the Collateral and any other documents necessary to evidence, perfect and realize upon the security interests and obligations of this Deed of Trust;

(d) in its discretion to file any claim or take any other action or proceeding which Secured Party may deem necessary or appropriate to protect and preserve the rights, titles and interests of Secured Party hereunder;

(e) to sign the name of Debtor to financing statements, drafts against Collateral Obligors, assignments or verifications of any of the Collateral and notices to Collateral Obligors;

(f) to station one or more representatives of Secured Party on Debtor's premises for the purpose of exercising any rights, benefits or privileges available to Secured Party hereunder or at law or in equity, including receiving collections and taking possession of books and records relating to the Collateral; and

(g) to cause title to any or all of the Collateral to be transferred into the name of Secured Party or any nominee or nominees of Secured Party.

The powers conferred on Secured Party pursuant to this Section are conferred solely to protect Secured Party's interest in the Collateral and shall not impose any duty or obligation on Secured Party to perform any of the powers herein conferred. No exercise of any of the rights provided for in this Section shall constitute a retention of collateral in satisfaction of the indebtedness as provided for the Uniform Commercial Code of New Mexico.

Section 3.11 **Standard of Care**. Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral in its possession if it takes such action for that purpose as Debtor requests in writing, but failure of Secured Party to comply with such request shall not of itself be deemed a failure to exercise reasonable care, and no failure of Secured Party to take any action not so requested by Debtor shall be deemed a failure to exercise reasonable care in the custody or preservation of any such Collateral.

Section 3.12 **Change Terms, Release Collateral**. Secured Party may extend the time of payment, arrange for payment in installments, otherwise modify the terms of, or release, any of the Collateral, without thereby incurring responsibility to Debtor or discharging or otherwise affecting any liability of Debtor. Secured Party shall not be required to take steps necessary to preserve any rights against prior parties to any of the Collateral.

### ARTICLE 4
### MORTGAGOR'S COVENANTS

Section 4.1 **Covenants**. To better secure the Debt, Mortgagor covenants and agrees with the Trustee and his substitutes and successors in the Trust, for the use and benefit of Mortgagee, that:

(a) **Liens, et. and Remedies Cumulative**. No lien, assignment, security interest, guaranty, right or remedy granted in, secured by or ancillary to this Deed of Trust shall be considered as exclusive, but each shall be cumulative of all others which Mortgagee or the Trustee may now or hereafter have.

(b) **Mortgagor Waives Marshaling of Assets and Sale in Inverse Order of Alienation Rights**. Mortgagor hereby irrevocably WAIVES all rights of Marshaling of assets or sale in inverse order of alienation in the event of foreclosure of this or any other security.

(c) **Mortgagor Will Correct Title Defects**. If at any future time any defect should be found to exist in the title to any of the Property, Mortgagor agrees to promptly commence and thereafter diligently proceed to cure the defect and defend the title. If any lien or encumbrance junior, equal or superior in rank or priority to the lien of this Deed of Trust should be discovered or arise at any time in the future then, unless the Mortgagee has given specific prior written consent to it, Mortgagor agrees to promptly discharge and remove it from the Mortgaged Property. Mortgagor will notify Mortgagee in writing five (5) days of the time that Mortgagor becomes aware of the filing of any mortgage, lien, security interest, financing statement or other security devise whatsoever against the Property.

(d) **Insurance Requirements**. At all times before the final termination of this Deed of Trust, Mortgagor agrees to provide, maintain and keep in force title, casualty, liability and other insurance for the Property as required by the Mortgagee and in any event Mortgagor will maintain the following specifically described insurance coverage:

(i) **Casualty Coverage**. An all-risk policy of permanent property insurance insuring the Property against al risks of any kind or character except those permitted by the Mortgagee in writing to be excluded from coverage thereunder.

(ii) **Boiler Coverage**. A boiler and machinery insurance policy covering loss or damage to all portions of the Property comprised of air-conditioning and heating systems, other pressure vessels, machinery, boilers or high pressure piping.

(iii) **Loss of Earnings Coverage**. An all-risk policy of insurance covering loss of earnings and/or rents from the Property in the event that the Property is not available for use or occupancy due to casualty, damage or destruction required to be covered by the policies of insurance described in (1) and (2) above.

(iv) **Liability Insurance**. Commercial general liability, auto liability, umbrella or excess liability and worker's compensation insurance against claims for bodily injury, death or property damage occurring on, in or about the Mortgaged Property in an amount and containing terms acceptable to the Mortgagee.

(v) **Coverage During Construction**. If all or any portion of the Property consists of improvements under construction; (i) a builder's all-risk form insurance policy on a completed value, non-reporting form, insuring the Property against all risks of any

kind or character except those permitted by the Mortgagee in writing to be excluded from coverage thereunder, and an all-risk policy of insurance covering loss of future earnings and/or rents from the Property in the event the Property is not ready or available for sue or occupancy due to casualty, damage or destruction required to be covered by such builder's all-risk insurance policy, (ii) policies of insurance to be carried by each contractor performing work in connection with the Property covering worker's compensation, employers' liability, commercial general liability and comprehensive automobile liability, including a broad form umbrella/excess liability insurance policy and (iii) policies of professional liability insurance to be carried by each design professional performing work in connection with the Property covering each such party against claims for actual or alleged errors, omissions or negligent acts in the performance of their respective services rendered in respect of the Property.

(vi) **Other Insurance Required.** Such other insurance against other insurable hazards, risks or casualties which at the time are commonly insured against in the case of owners and premises similarly situated, due regard being given to the financial condition of Mortgagor, the height and type of the Property, its construction, location, use and occupancy.

Notwithstanding anything in this Deed of Trust to the contrary, pursuant to Section 59A-16-14 NMSA 1978 (1992 Repl.), Mortgagee hereby informs Mortgagor of Mortgagor's right to negotiate any policy of insurance or renewal thereof covering the Mortgaged Property through an insurer, agent, solicitor or broker of Mortgagor's choice. By execution of this Deed of Trust, Mortgagor hereby signifies that it has been so informed. This provision, however, shall not prevent the exercise by Mortgagee of its right to designate the terms and provisions of the policy or policies and the amount of coverage with respect to insurance on the Mortgaged Property as provided herein.

(e) **Insurance Companies, Policies, Endorsements and Premium Payments.** Mortgagor agrees that all required insurance will be written on forms acceptable to the Mortgagee and by companies having a Best's Insurance Guide Rating of not less than A or A+ and which are otherwise acceptable to the Mortgagee, and that such insurance (other than third party liability insurance) shall be written or endorsed so that all losses are payable to Mortgagee (for pro rate benefit of Mortgagee). The original policies evidencing such insurance shall be delivered by Mortgagor to Mortgagee and held by Mortgagee, unless the Mortgagee expressly consents to accept insurance certificates instead. Each such policy shall expressly prohibit cancellation or modification of insurance without thirty (30) days' written notice to Mortgagee. Mortgagor agrees to furnish due proof of payment of the premiums for all such insurance to Mortgagee promptly after each such payment is made and in any case at least fifteen (15) days before payment becomes delinquent.

(f) **Mortgagee's Rights to Collect Insurance Proceeds.** Mortgagor hereby assigns to Mortgagee the exclusive right to collect any and all monies that may become payable under any insurance policies covering any part of the Property, or any risk or about the Property.

(g) **Effects of Foreclosure on Insurance Policies and Post-foreclosure Event Claims.** Foreclosure of this Deed of Trust shall automatically constitute foreclosure upon all policies of insurance insuring any part of or risk to the Property and all claims thereunder arising from post-foreclosure events. The successful bidder or bidders for the Property at foreclosure, as their respective interests may appear, shall automatically accede to all of Mortgagor's rights in, under and to such policies and all post-foreclosure event claims, and such bidder(s) shall be named as insured(s) on request, whether or not the trustee's deed or bill of sale to any such successful bidder mentions insurance.

(h) **Application of Insurance Proceeds Collected Before Foreclosure.** Unless an Event of Default has occurred and so long as the Mortgagee is satisfied that the applicable proceeds (together with other funds deposited with Mortgagee by or on behalf of Mortgagor for the purpose of repair and restoration of the applicable damage or destruction) are sufficient to pay all costs of repair and restoration of the applicable damage or destruction, Mortgagee will hold all proceeds of insurance which was paid for by Mortgagor or by anyone other than Mortgagee or another holder of any of the Debt and which proceeds are actually received by Mortgagee before foreclosure (and such other funds deposited with Mortgagee) and will disburse the same as such repairs or restoration are made, upon such terms and conditions as the Mortgagee may reasonably elect, and upon presentation of satisfactory evidence to the Mortgagee that payment is being requested for permissible repair and restoration and without the imposition of any lien on the Property. Any insurance proceeds remaining if the parties do not agree to the terms of the advance of the funds for repair and restoration within thirty (30) days after the event producing such funds, or if an Event of Default occurs, or after completion of the repair and restoration, shall, unless the Mortgagee shall otherwise consent in writing, be applied in payment of the Debt.

(i) **Application of Insurance Proceeds Collected After Foreclosure.** Unless the right to collect any uncollected insurance proceeds recoverable for events occurring before foreclosure is reserved at the applicable foreclosure sale, all proceeds of all such insurance which are not so reserved at the foreclosure sale and are not actually received until after foreclosure shall be the property of the successful bidder or bidders at foreclosure, as their interests may appear, and Mortgagor shall have no interest in them and shall receive no credit for them.

(j) **Mortgagee Not Obligated to Require, Provide or Evaluate Insurance.** Neither Mortgagee shall not have any duty to Mortgagor or anyone else to either require or provide any insurance or to determine the adequacy or disclose any inadequacy of any insurance.

(k) **Mortgagee May Elect to Insure Only its Owner Interests.** If Mortgagee elects at any time or for any reason to purchase insurance relating to the Property, it shall have no obligation to cause Mortgagor or anyone else to be named as an insured, to cause Mortgagor's or anyone else's interests to be insured or protected or to inform Mortgagor or anyone else that his or its interests are uninsured or underinsured.

(l) **Mortgagor Will Correct Defects, Provide Further Assurances and Papers.** Upon Mortgagee's request, Mortgagor will promptly correct any defect which hereafter may be discovered in the text, execution or acknowledgment of the Notes or other Credit Document, this Deed of Trust or any Credit Document or in the description of any of the Property, and will deliver such further assurances and execute such additional papers as in the opinion of Mortgagee or its legal counsel shall be necessary, property or appropriate (1) to better convey and assign to the Trustee and Mortgagee all the Property intended or promised to be conveyed or assigned or (2) to properly evidence or give notice of the Debt or its intended or promised security.

(m) **Mortgagor Will Pay Taxes and Impositions and Furnish Receipts.** At Mortgagor's own cost and expense, Mortgagor agrees to pay and discharge all taxes, assessments, maintenance charges, permit fees, impact fees, development fees, capital recovery charges, utility reservation and standby fees and all other similar and dissimilar impositions of every kind and character ("**Impositions**") charged, levied, assessed or imposed against any interest in any of the Property, as they become payable and before they become delinquent. Mortgagor agrees to furnish due proof of such payment to Mortgagee promptly after payment and before delinquency.

(n) **Mortgagor to Pay Monthly Tax and Insurance Deposits on Request.** If and after the Mortgagee requests it, Mortgagor agrees to pay the monthly tax and insurance premium deposits required by Article 7 and to provide Mortgagee any additional sums needed to pay the taxes and insurance premiums for the Property when due.

(o) **Mortgagor Will Maintain Property and Won't Remove Improvements.** Mortgagor agrees to keep, preserve and maintain all elements of the Property in a good state of repair and condition to keep all equipment and stores of supplies needed for its proper and full operation on the Property, well stocked and in good operating condition. Mortgagor will not tear down, damage or attempt to remove, demolish or materially alter or enlarge any elements of the Property, or construct any new Improvements, without the prior written consent of the Mortgagee. Mortgagor shall have the right, without such consent, to remove and disposes of, free from the lien, assignments and security interests of this Deed of Trust, such Fixtures and Equipment as from time to time become worn out or obsolete, provided that simultaneously with or before such removal any such equipment shall be replaced with other equipment of a value at least equal to that of the replaced equipment and free from any title retention or security agreement or other encumbrance and from any reservation of title, and by such removal and replacement Mortgagor shall be deemed to have subjected such equipment to the lien assignments and security interests of this Deed of Trust. Mortgagor shall not grant, join in or consent to any lien, security interest, easement, license, use or other charge or interest covering or affecting all or any part of the Property or initiate, join in and consent to the change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Property or any part thereof without the prior written consent of the Mortgagee.

(p) **Mortgagor Will Protect Property from Mechanic's Liens.** Mortgagor agrees to promptly pay all bills for and materials incurred in connection with the Property and to prevent the fixing of any lien against any part of the Property, even if it is inferior to this Deed of Trust, for any such bill which may be legally due and payable. Mortgagor agrees to furnish due proof of such payment to Mortgagee after payment and before delinquency.

(q) **Mortgagee May Grant Releases without Impairing Other Collateral or Rights.** At all times, the Mortgagee shall have the right to cause Mortgagee to release any part of the Property or any other security from this Deed of Trust or any other security instrument or devise without releasing any other part of the Property or any other security, without affecting the lien, assignment or security interest of this Deed of Trust as to any property or rights not released and without affecting or impairing the liability of any maker, guarantor or surety on the Credit Documents or other obligations.

## ARTICLE 5
## MORTGAGOR'S REPRESENTATIONS AND WARRANTIES

Section 5.1 **No False Representation.** No representation or warranty contained in this Deed of Trust and no statement contained in any certificate, schedule, list, financial statement or other papers furnished to Mortgagee by or on behalf of Mortgagor contains--or will contain--any untrue statement of material fact, or omits – or will omit – to state a material fact necessary to make the statements contained herein or therein not misleading.

Section 5.2 **Title.** Mortgagor has good and marketable title to the Property, free and clear of any lien or security interest except only for liens and security interests which are either established or expressly permitted by this Deed of Trust. Except as otherwise expressly permitted by this Deed of Trust, the lien and security interest of this Deed of Trust will constitute valid and perfected first and prior liens and security interests on the Property, subject to no other liens, security interests or charges whatsoever. The Property is free from damage caused by fire or other casualty. All of the Mortgaged Property qualifies as "trust real estate" as defined by § 48-10-3 L NMSA 1978 (1993 Supp.).

## ARTICLE 6
## DEFAULTS AND REMEDIES

Section 6.1 **Release for Full Payment and Performance.** Subject to the automatic reinstatement provisions of Section 9.14 below, this Deed of Trust shall terminate and be of no further force and effect (and shall be released on Mortgagor's written request and at Mortgagor's cost and expense) upon full payment of the Debt, complete performance of all of the obligations of the Obligors and final termination of Mortgagee's obligations--if any--to make any further advances under the Notes or to provide any other financial accommodations to any Obligor.

Section 6.2 **Events of Default.** The occurrence of any of the following events shall constitute and Event of Default (herein so called) under this Deed of Trust.

(a) Any condemnation proceeding is commenced relating to all or any material part of the Property.

(b) Any substantial damage to or destruction of the Property occurs and insurance proceeds (together with other funds deposited with Mortgagee by or on behalf of Mortgagor for the purpose of repair and restoration of such damage or destruction) are not sufficient to repair and restore the Property, or if insurance proceeds are not paid within a reasonable time.

(c) A default, an event of default or a similar event (however denominated) shall occur under any other interest now or hereafter securing the Note, unless such default, event of default or similar event is fully cured within any applicable cure period agreed to in writing.

Section 6.3 **Remedies.** Upon the occurrence of any Event of Default and at any time hereafter:

(a) **Legal Proceedings.** Trustee and Mortgagee shall have the right and power to proceed by suit or suits in equity or at law, whether for the specific performance of any covenant or agreement of Mortgagor contained herein or in aid of the execution of the powers herein granted, or for foreclosure or the sale of the Property or any part thereof under the judgment or decree of any court of competent jurisdiction, or for the enforcement of any other appropriate legal or equitable remedy.

(b) **Trustee's Sale.** By virtue of his position, a power of sale is conferred upon Trustee of this Deed of Trust under which the Mortgaged Property may be sold as provided by the New Mexico Deed of Trust Act after an Event of Default. It shall be the duty of the Trustee and of his successors and substitutes in the Trust, on request by the Mortgagee (which request is hereby presumed) to enforce the Trust by selling the Mortgaged Property as is provided in this Deed of Trust.

Section 6.4 **Times and Place of Sale and Notices.** Upon receipt of such request, Trustee shall give written notice of the time and place of sale, legally describing the Mortgaged Property (the "Notice of Sale"), by each of the following methods:

(1) publication of the Notice of Sale shall be as provided by the law for foreclosures of mortgages on real estate;

(2) posting of the Notice of Sale at least twenty (20) days before the date of sale in some conspicuous place on the Mortgaged Property to be sold, if such can be accomplished without a breach of the peace, and at one of the places provided for posting public notices at the courthouse of the county in which the Mortgaged Property is to be sold;

(3) recording of the Notice of Sale in the office of the clerk of each county in which the Mortgaged Property is situated;

(4) giving Notice of Sale by certified or registered mail, postage prepaid, not later than thirty (30) days after recording the Notice of Sale, by sending a copy of the Notice of Sale with the recording date shown on the Notice of Sale, addressed as follows: (i) to each person whose name and address are provided in a request for notice pursuant to § 48-10-12 NMSA 1978 (1987 Repl.), which has been recorded before the recording of the Notice of Sale, directed to the address designated in the request; and (ii) to each person, who, at the time of the recording of the Notice of Sale, appears by a document recorded in the real estate records of the county clerk in the county in which any part of the Mortgaged Property is situated to have an interest in any of the Mortgaged Property, if the address of such person appears in the document, then the above notice should be directed to such address, except that if the interest appearing in the records of the County Clerk is a deed of trust, only the beneficiary as provided in the deed of trust need be mailed notice in this manner; and

(5) Trustee or Mortgagee shall within five (5) business days after recordation of the Notice of Sale, mail by certified or registered mail, postage prepaid, a copy of any Notice of Sale showing the recording date the Notice of Sale was recorded to each of the persons who were parties to this Deed of Trust. The Notice of Sale shall be addressed to the mailing address specified in this Deed of Trust. In addition, Notice of Sale to each such party shall contain a statement that an Event of Default has occurred and shall provide the nature of the Event of Default and of the election of Mortgagee to sell or cause to be sold the Mortgaged Property as provided in the Deed of Trust. In addition, the Notice of Sale shall be signed by Mortgagee or the agent of Mortgagee. A copy of the additional Notice of Sale shall also be sent with a copy of the Notice of Sale provided in <u>subsection (4)</u> above to all junior encumbrancers together with a written statement that the interest of the junior encumbrancers may be subject to being terminated by the Trustee's sale. The written statement may be provided in the statement of the Event of Default.

The Notice of Sale shall contain the street address, if any, or identifiable location as well as the legal description of the Mortgaged Property.

The sale shall be held at the time and place designated in the Notice of Sale on a day other than a Saturday, Sunday, legal holiday or non-banking day and at the time provided by law for the foreclosure sale of real estate mortgages, on the front steps of the courthouse of the county in which the Mortgaged Property is located, or if the Mortgaged Property is located in more than one county, the sale may be held in any county in which part of the Mortgaged Property is located.

Trustee may not exercise the power of sale of Mortgaged Property before the expiration of one hundred eighty (180) days from the recording of the Notice of Sale. A sale of Mortgaged property as provided in the power of sale is in this Deed of Trust shall not be held after an action to foreclose this Deed of Trust has been commenced unless the foreclosure action has been dismissed.

On the date and at the time and place designated in the Notice of Sale, Trustee shall sell the Mortgaged Property at public auction for cash to the highest bidder. To determine the highest bidder, Mortgagee or Mortgagor present at the sale may suggest the then existing and legally described lots, blocks, tracts or parcels of the Mortgaged Property in which the Mortgaged Property may be sold. Trustee shall ascertain all such suggestions, shall conditionally sell the Mortgaged Property under each such suggestion and, in addition, shall sell the Mortgaged Property as a whole. Trustee shall determine which conditional sale results in the highest total bid price for all of the Mortgaged Property. The lawyer for Trustee may conduct the sale and may act at the sale as auctioneer for Trustee. Any person, including Trustee or Mortgagee, may bid at the sale. Only Mortgagee may make a credit bid, as defined by § 49-10-3 NMSA 1978 (1993 Supp.), instead of cash, at the sale. A junior encumbrancer, as defined by § 48-10-3 NMSA 1978 (1993 Supp.), may bid the amount of value of the obligation secured by the lien, mortgage, encumbrance, or real estate contract, as the case may be, owed to the junior encumbrancer, less the amount or value of any prior deeds of trust, mortgages, liens, encumbrances, or real estate contracts, if any, instead of cash, at the sale. In appropriate circumstances, Trustee may sell the Mortgaged Property subject to prior deeds of trust, mortgages, liens, encumbrances, or real estate contracts which are not being foreclosed. Every bid shall be deemed an irrevocable offer until the sale is completed and the sale shall not be deemed completed until the purchaser pays the price bid in immediately collectible or available federal funds, except in the case of Mortgagee and junior encumbrancer to the extent provided above. The purchaser at the sale, other than Mortgagee and junior encumbrancer to the extent provided above, shall immediately pay the price bid. If the purchaser fails to pay the amount bid by the purchaser for the Mortgaged Property struck off to the purchaser at the sale, Trustee may accept the next highest bid or proceed with the sale of the Mortgaged Property to the highest bidder. Trustee may subsequently in any postponed or continued sale of the Mortgaged Property reject any bid by the person failing to pay the amount bid. Trustee may, for purposes of verifying the proper amount to be paid or the availability of immediately collectible federal funds, postpone or continue the sale for a reasonable period by giving notice of the new time by public declaration at the time and place last appointed for the sale. No other notice of the postponed or continued sale shall be required.

Upon receipt by Trustee of the payment of the price or credit bid by the purchaser, Trustee shall execute and deliver the Trustee's deed to the purchaser. The Trustee's deed shall raise the presumption of compliance with the requirements of the New Mexico Deed of Trust Act relating to the exercise of the power of sale and the sale of the Mortgaged Property, including recording, mailing, publishing, and posting of the Notice of Sale and conduct the sale, in favor of subsequent purchasers, mortgagees, or encumbrancer for value and without actual notice. The Trustee's deed shall operate to convey to the purchaser the title, interest and claim of Trustee, Mortgagee, Mortgagor, their respective successors in interest and all persons claiming the Mortgaged property sold by or through them, including all interest or claim in the Mortgaged Property acquired after the recording of this Deed of Trust and before delivery of the Trustee's deed.

The conveyance by the Trustee's deed shall be without right of redemption, and clear of the interests of junior encumbrancer in the Mortgaged Property whose interests have been effectively foreclosed. The redemption period for any junior encumbrancer nevertheless entitled to redeem the Mortgaged property after the conveyance by the Trustee's deed shall be one (1) month in lieu of nine (9) months, as provided by § 39-5-18 NMSA 1978 (1991 Repl.).

Section 6.5 <u>Application of Proceeds, Rents, Etc.</u>

(a) In the event of sale of the Mortgaged Property by Trustee, Trustee shall apply the proceeds of any sale of the Mortgaged Property in the following order:

(1) to the costs of exercising the power of sale and of sale, including the payment of the fees of Trustee and reasonable attorneys' fees actually incurred by Trustee and Mortgagee and Mortgagee;

(2) to the payment of the Debt;

(3) to the payment of all other obligations provided in or secured by this Deed of Trust;

(4) to the junior encumbrances in order of their priority; and

(5) to Mortgagor, after full payment of the above classes.

Trustee may, in its discretion, instead of any one or more of the applications for sale proceeds from such sale by Trustee, elect to deposit the balance of the proceeds available for distribution to junior encumbrancer with the clerk of the district court in the county where the sale took place. Trustee may deposit the balance of such sales proceeds in connection with a separate civil interpleader action.

(b) <u>Application of Rent</u>. Any rent and other amounts generated by the holding, leasing, operation or other use of the Mortgaged Property other than proceeds of the sale of the Mortgaged Property by Trustee shall be applied by Mortgagee (or the receiver, if one is appointed) to the extent that funds are so available therefrom, in the following order of priority:

(1) <u>Costs</u>. First, to the payment of the costs and expenses of taking possession of the Mortgaged Property and of holding, using, leasing, repairing, and selling the same, including, without limitation, (1) reasonable trustees' and receivers' fees, (2) court costs, (3) reasonable attorneys' and accountants' fees, (4) costs of advertisement, and (5) the payment of any of all Impositions, liens, security interests or other rights, titles or interests superior to the lien and security interest of this Deed of Trust;

(2) <u>Debt Other than the Notes</u>. Second, to the payment of all amounts, other than the principal balance and accrued but unpaid interest, which may be due under the Notes, together with interest thereon as provided therein;

(3) <u>Debt</u>. Third, to the payment of the remaining Debt, the application to the different portions of the Debt to be made in such manner, order and priority as Mortgagee in its sole discretion may elect;

(4) <u>Other Required Payments</u>. Fourth, to the payment of any amounts required by law to be paid before payment to Mortgagor; and

(5) <u>Balance</u>. Fifth, to Mortgagor, its heirs, legal representatives, successors and assigns, or to whosoever may be lawfully entitled to receive the same.

Section 6.6 **Mortgagee's Foreclosure Options**. At the option of Mortgagee, this Deed of Trust may be foreclosed under a power of sale as provided by the New Mexico Deed of Trust Act, or instead be foreclosed in the manner provided by law for foreclosures of mortgages on real estate. Either Mortgagee or Trustee shall constitute the proper and complete party plaintiff in any action to foreclose this Deed of Trust. Mortgagee or Trustee may commence an action to foreclose this Deed of Trust at any time before the Mortgaged Property has been sold as provided in the power of sale. If Mortgagee or Trustee should institute suit for collection of the Debt or foreclose this Deed of Trust. Mortgagor or Trustee may commence an action to foreclose this Deed of Trust at any time before the Mortgaged Property has been sold as provided in the power of sale. If Mortgagee or Trustee should institute suit for collection of the Debt or foreclosure of the lien of this Deed of Trust, the Mortgagee may at any time before the entry of final judgment dismiss the same (or cause it to be dismissed) or request Trustee to dismiss the same, and require Trustee to sell the Mortgaged Property in accordance with the provisions of this Deed of Trust.

Section 6.7 **Multiple Sales; Deed of Trust Continues in Effect**. No single sale or series of sales by the Trustee or by any substitute or successor and no judicial foreclosure shall extinguish the lien or exhaust the power of sale under this Deed of Trust except with respect to the items of property sold, nor shall it extinguish, terminate or impair Mortgagor's contractual obligations under this Deed of Trust, but such lien and power shall exist for so long as, and may be exercised in any manner by law or in this Deed of Trust provided as often as the circumstances require to give Mortgagee and Mortgagee full relief under this Deed of Trust, and such contractual obligations shall continue in full force and effect until final termination of this Deed of Trust.

Section 6.8 **Redemption Limitation**. If the Mortgaged Property is sold at a foreclosure sale following a court ordered foreclosure sale, the redemption period following the foreclosure sale shall be one (1) month instead of nine (9) months, as provided by § 39-5-19 NMSA 1978 (1991 Repl.).

Section 6.9 **Successor Trustee**. If a person or entity appointed as Trustee fails to qualify, is unwilling, unqualified, or unable to serve, or resigns as Trustee, the Mortgagee may appoint a Successor Trustee and the appointment shall constitute a substitution of Trustee. The Mortgagee may remove Trustee at any time for any reason or cause and appoint a Successor Trustee and the appointment shall constitute a substitution of Trustee. Substitutions shall be made by recording notice of the substitution in the office of the county clerk of each county in which all or any part of the Mortgaged Property is situated at the time of the substitution. Mortgagee shall give written notice through registered or certified mail, postage prepaid, to Mortgagor, Trustee, and the Successor Trustee. A person appointed as a Trustee under this Deed of Trust may resign as Trustee at any time. Resignation by Trustee shall be made by recording notice of the resignation in the office of the county clerk of each county in which all or any part of the Mortgaged Property is situated at the time of the resignation. Trustee shall in such case give written notice through registered or certified mail, postage prepaid, to Mortgagor and Mortgagee. If a Trustee fails to qualify, or is unwilling or unable to serve, or resigns, the validity of this Deed of Trust shall not be affected, except that no action required to be performed by Trustee as provided herein or in the New Mexico Deed of Trust Act may be taken until a Successor Trustee is appointed by Mortgagee. If Mortgagee fails or refuses to appoint a Successor Trustee, the then-acting sheriff of the county in which the Mortgaged Property is situated shall act as Successor Trustee, pursuant to § 47-1-42 NMSA 1978 (1991 Repl.).

Section 6.10 **Reinstatement**. If, before the final maturity date of the Debt, all or part of the Debt becomes due, or is declared due or accelerated due to an Event of Default, any person, may, before 5:00 P.M. on the last day other than a Saturday, Sunday, legal holiday, or non-banking day before the date of sale or the filing of an action to foreclose this Deed of Trust, reinstate this Deed of Trust by paying to Trustee in collected federal funds the entire amount of the Debt then due, other than such portion of the Debt as would not then be due had no Event of Default occurred, by curing all other defaults, and by paying, as applicable: (i) amounts advanced by Mortgagee and any Mortgagee as provided in the Credit Documents for protection or maintenance of the Mortgaged Property, (ii) the costs and reasonable attorneys' fees actually incurred by Trustee and Mortgagee in exercising the power of sale and the trustee's sale proceeding to the date of payment of the reinstatement amount in an amount not to exceed the greater of One Hundred Dollars and No/Cents ($100.00) or one-half of one percent (0.50%) of the entire unpaid principal sum secured by this Deed of Trust, (iii) the recording fee for a cancellation of the Notice of Sale, and (iv) fees of Trustee in an amount not to exceed the greater of One Hundred Dollars and No/Cents ($100.00) or one-half of one percent (0.50%) of the entire unpaid principal sum secured by this Deed of Trust so long as such fees doe not duplicate or include costs and fees under item (ii) above. In accepting or rejecting a tendered reinstatement amount, Trustee may rely upon a written statement furnished by Mortgagee as to the proper amount. If this Deed of Trust is reinstated as provided herein, Trustee shall have a cancellation of the Notice of Sale recorded in the same office of the county clerk where the Notice of Sale was recorded.

Section 6.11 **Deficiency Suit**. Within twelve (12) months after the date of a sale of the Mortgaged Property under the Deed of Trust by Trustee as provided in the New Mexico Deed of Trust Act, a separate action may be commenced to recover a deficiency judgment for the balance of the Debt. The deficiency judgment shall be for an amount equal to the sum of the total amount owing Mortgagee as of the date

of the sale, as determined by the court, and, if applicable, the amount owing on prior mortgages, deeds of trust, liens, encumbrances and real estate contracts with interest, less the sale price at the sale by Trustee of the Mortgaged Property. Any deficiency judgment recovered shall include interest on the amount of the deficiency from the date of the sale at the rate provided in the Credit Documents, together with any costs of the action.

Section 6.12 **Right to Receiver**. Upon the occurrence of an Event of Default or at any time after commencement of a Trustee's foreclosure sale or any legal proceedings under this Deed of Trust, Mortgagee may, at its election, by or through the Trustee or otherwise, make application to a court of competent jurisdiction for appointment of a receiver of the Property, as a matter of strict right, without notice to Mortgagor and without regard to the adequacy of the value of the Property for the repayment of the Debt, and Mortgagor hereby irrevocably consents to such an appointment. Any receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to possess, rent, maintain, repair and operate the Property upon such terms and conditions as may be approved by the court, and shall apply the rents realized in the same manner and order as foreclosure proceeds in accordance with this Deed of Trust.

### ARTICLE 7
### TAX AND INSURANCE DEPOSITS

In addition to the Debt payments, promptly after the Mortgagee's request, Mortgagor agrees to deposit with Mortgagee each month an amount equal to one-twelfth (1/12) of the aggregate of (i) the next succeeding premiums (or payments in respect of them, if premiums are financed) on all insurance policies which Mortgagor is required by or pursuant to this Deed of Trust to maintain on the Property, and (ii) the estimated amount of the next succeeding annual tax payments, assessment installments, maintenance charges and other Impositions to become due and payable with respect to the Property plus, with the first of such monthly deposits, an additional month's share (a twelfth) of such premiums and taxes for each month less than twelve remaining before the next payment thereof falls due. At least fifteen (15) days before the date on which any such insurance premium (or payment in respect of it, if premiums are financed) or any of the Impositions must be paid to avoid delinquency, promptly after the Mortgagee' request, Mortgagor agrees to deliver to Mortgagee a statement or statements showing the amount of the premium (or payment in respect of it, if premiums are financed) or Impositions required to be paid and the name and mailing address of the concern or authority to which it is payable and, at the same time, Mortgagor agrees to deposit with Mortgagee such amounts as will, when added to the amount of such deposits previously made and then remaining available for the purpose, be sufficient to pay such insurance obligations or Impositions. The Mortgagee shall have the right to cause Mortgagee to and will, if, as and when requested by Mortgagor to do so, cause Mortgagee to apply such deposits in payment of such insurance obligations and Impositions. Notwithstanding the foregoing, to the extent that § 48-7-8 NMSA 1978 (1987 Repl.) applies to this Deed of Trust, any balance in the above deposit fund exceeding two month's total deposit charges for future taxes, insurance premiums, and other required charges, plus the pro rata accrual for such taxes, premiums, and other charges, upon the demand of Mortgagor, but not more than once per year, shall be credited to the principal amount of the Debt.

### ARTICLE 8
### ASSIGNMENT OF RENTS

Section 8.1 **Assignment of Rents, Revenues, Income and Profits**. Mortgagor hereby assigns and transfers to Mortgagee all rents, revenues, income and profits ("Rental") payable under each Lease (hereinafter defined) now or at any time hereinafter existing, such assignment being upon the terms set forth in Section 8.2 below. The term "Lease" or "Leases" means any oral or written agreement between Mortgagor and another person or entity to use or occupy all or any portion of the Property, together with any guaranties or security for the obligations of any tenant, lessee, sublessee or other person or entity having the right to occupy, use or manage any part of the Property under a Lease. Each time Mortgagor enters into a Lease, such Lease shall automatically become subject to this Article 8 without further action.

Section 8.2 **Assignment is Absolute; Grant of Revocable License to Mortgagor to Collect Rental before an Event of Default**. The transfer of Rental to Mortgagee shall be upon the following terms: (a) until receipt from Mortgagee of notice of the occurrence of an Event of Default, Mortgagor shall have the right under a retained and reserved license (but limited as provided herein) to collect Rental and each tenant may pay Rental directly to Mortgagor; but after an Event of Default, Mortgagor's license shall automatically terminate and be revoked and to the extent Mortgagor collects any Rental thereafter accruing or paid, Mortgagor covenants to hold all such Rental in trust for the use and benefit of Mortgagee for the pro rata benefit of Mortgagee; (b) upon receipt from Mortgagee of notice that an Event of Default exists, each tenant is hereby authorized and directed to pay directly to Mortgagee all Rental thereafter accruing or payable and receipt of Rental by Mortgagee shall be a release of such tenant to the extent of all amounts so paid; (c) Rental so received by Mortgagee shall be applied by Mortgagee, first to the expenses, if any, of collection and then in accordance with this Deed of Trust; (d) without impairing any rights hereunder, the Mortgagee may, at its option, at any time and from time to time, direct Mortgagee to release to Mortgagor Rental so received by Mortgagee, or any part thereof; (e) Mortgagee shall not be liable for any failure to collect or any failure to exercise diligence in the collection of Rental; and (f) the assignment contained in this Article 8 shall terminate upon the release of this Deed of Trust, but no tenant shall be required to take notice of termination until a copy of such release shall have been delivered to such tenant. As between Mortgagor (and any person claiming through or under Mortgagor, other than any tenant who has not received notice that an Event of Default has occurred pursuant to Section 8.2(b) and Mortgagee the assignment contained in this Article 8 is intended to be absolute, unconditional and presently effective and the provisions of Section 8.2(a) and 8.2(b) are intended solely for the benefit of each tenant and shall never inure to the benefit of Mortgagor or any person claiming through or under Mortgagor, other than a tenant who has not received such notice. It shall never be necessary for Mortgagee to institute legal proceedings of any kind whatsoever to enforce the provisions of this Article 8. It is agreed that any Rental retained and reserved by Mortgagor pursuant to the aforementioned license will not constitute a payment by the Mortgagor to Mortgagee of any portion of the Debt (and hence will not be credited to the Debt) until the Rental is actually paid to the Mortgagee and retained by the Mortgagee and then, in such event, the Rental so received shall be applied in accordance with Section 8.2(c).

Section 8.3 **Remedies**. Should an Event of Default occur, Mortgagor agrees to deliver to Mortgagee possession and control of all Rental held by Mortgagor. Mortgagor specifically agrees that Mortgagee may upon the occurrence of any Event of Default or at any time thereafter, personally or through an agent take possession and control of all or any part of the Property and may receive and collect all Rental theretofore accrued and all thereafter accruing therefrom until the final termination of this Deed of Trust or until the foreclosure of the lien of this Deed of Trust, applying so much thereof as may be collected before sale of the Property by the Trustee or judicial foreclosure of this Deed of Trust first to the expenses incurred in obtaining the Rental and then applying the Rental so received in accordance with the provisions hereof. Any such action shall not operate as a waiver of the Event of Default in question, or as an affirmance of any Lease or of the rights of any tenant in the event title to that part of the Property covered by the Lease or held by the tenant should be acquired by Mortgagee or any Mortgagee or other purchaser at foreclosure sale. Mortgagee, Mortgagee's agent or the Trustee may use against Mortgagor or any other person such lawful or peaceable means as the person acting may see fit to enforce the collection of any such Rental or to secure possession of the Property, or any part of it and may settle or compromise on any term as Mortgagee, Mortgagee's agent or the Trustee sees fit, the liability of any person or persons for any such Rental. In particular, Mortgagee, Mortgagee's agent or the Trustee may institute and prosecute to final conclusion actions of forcible entry and detainer, or actions of trespass to try title, or actions for damages, or any other appropriate actions, in the name of Mortgagee, Mortgagor, or the Trustee, and may settle, compromise or abandon any such actions as Mortgagee, Mortgagee's agent or the Trustee may see fit; and Mortgagor binds itself and its successors and assigns to take whatever lawful or peaceable steps Mortgagee, Mortgagee's agent or the Trustee may ask of it or any such person or concern so claiming to take for such purposes, including the institution and prosecution of actions of the character above stated. However, none of the Mortgagee, Mortgagee's agent or the Trustee shall be obligated to collect any such Rental or be liable or chargeable for failure to do so. Upon any sale of the Property or any part

thereof in foreclosure of the lien or security interest created by this Deed of Trust, such Rental so sold which thereafter accrues shall be deemed included in such sale and shall pass to the purchaser free and clear of the assignment made in this Article 8. Nothing in this Section 8.3 is intended to require the Mortgagee to institute any legal proceedings or engage in any self-help remedies in order to make the absolute assignment of the Rental to Mortgage operative.

Section 8.4 **Mortgagee in Possession; No Liability of Mortgagee.** This assignment shall not, before entry upon and taking possession of the Property by Mortgagee, be deemed to constitute Mortgagee a "mortgagee in possession," nor obligate Mortgagee to appear in or defend any proceeding relating to any of the Leases, or assume any obligation under the Leases including the obligation to return any deposit delivered to Mortgagor by any tenant. Mortgagee shall not be liable for any injury or damage to person or property in or about the Property. Neither the collection of Rental due under the Leases herein described nor possession of the Property by Mortgagee shall render Mortgagee liable with respect to any obligations of Mortgagor under any of the Leases.

Section 8.5 **Additional Covenants, Warranties and Representations Concerning Leases and Rental.** Mortgagor covenants, warrants and represents that:

(a) Neither Mortgagor nor any previous owner has entered into any prior oral or written assignment, pledge or reservation of the Rental entered into any prior assignment or pledge of Mortgagor's landlord interests in any Lease or performed any act or executed any other instruments which might prevent or limit Mortgagee from operating under the terms and conditions of this Article 8;

(b) Mortgagor has good title to the Leases and Rental hereby assigned and the authority to assign same, and no other person or entity has any right, title or interest in and to the landlord's interests therein;

(c) All existing Leases are valid, unmodified and in full force and effect, except as indicated herein, and no default exists thereunder.

(d) No Rental has been, nor does Mortgagor anticipate that any Rental will be, waived, released, discounted, set off or compromised;

(e) Mortgagor has not received any funds or deposits from any tenant for which credit has not already been made on account of accrued Rental;

(f) Mortgagor shall (i) perform all of the terms and conditions of the Leases, (ii) upon Mortgagee's request, execute an additional assignment to Mortgagee of all Leases then affecting the Property and all Rental and other sums due thereunder by assignment(s) in form and substance satisfactory to the Mortgagee and (iii) at the request of Mortgagee, record such Leases and such assignment(s) thereof. Mortgagor will not, without the prior written consent of the Mortgagee, amend, modify, extend, renew, terminate, cancel or surrender any Lease or suffer or permit any of the foregoing, orally or in writing;

(g) Mortgagor shall not execute any Lease unless the form of the Lease has been approved by the Mortgagee and the tenant under such Lease and the terms of such Lease shall comply with leasing standards for the Property from time to time approved by the Mortgagee in writing;

(h) Mortgagor shall give immediate notice to Mortgagee of any notice Mortgagor received from any tenant or subtenant under any Leases specifying any claimed default by any party under such Leases;

(i) Mortgagor shall enforce the tenants' obligations under the Leases;

(j) Mortgagor shall defend, at Mortgagor's expense, any proceeding pertaining to the Leases, including, if Mortgagee so requests, any such proceeding to which Mortgagee is a party;

(k) Mortgagor shall neither create nor permit any encumbrance upon its interest as landlord under the Leases, except for this Deed of Trust and any other encumbrances permitted by this Deed of Trust;

(l) Mortgagor shall not encumber or assign, or permit the encumbrance or assignment of, any Leases or Rental without the prior written consent of the Mortgagee;

(m) Mortgagor shall not waive or release any obligation of any tenant under the Leases without the prior written consent of the Mortgagee;

(n) Each Lease executed after the date hereof shall contain a statement signed by the Mortgagor that such Lease is subject to this Deed of Trust;

(o) Mortgagor shall from time to time furnish to Mortgagee, within thirty (30) days after demand therefor, true, correct and complete copies of all Leases; and

(p) Mortgagor shall not in any event collect any Rental more than one (1) month in advance of the time it will be earned (and if Mortgagor does so, in addition to any other rights or remedies by reason of such Event Default, all Rental so collected more than one (1) month in advance of the time it is earned shall be delivered to Mortgagee to be applied to the Debt).

Section 8.6 **Merger.** There shall be no merger of the leasehold estates created by the Leases with the fee or any other estate in the Property without the prior written consent of the Mortgagee.

Section 8.7 **Reassignment.** It is understood and agreed that a full and complete release of this Deed of Trust shall operate as a full and complete reassignment to Mortgagor of the Mortgagee's rights and interests under this Article 8 (subject to the automatic reinstatement provisions of Section 9.14 below).

Section 8.8 **Subordination of Deed of Trust to Leases.** It is agreed and understood that the Mortgagee hereby reserves the right and shall have the right, at any time and from time to time, without the consent or joinder of any other party, to subordinate this deed of Trust and the liens, assignments and security interests created by this Deed of Trust to all or any of the Leases regardless of the respective priority of any of such Leases and this Deed of Trust. Upon doing so and filing evidence of such subordination in the real property records in the county or counties where the Real Property is located, a foreclosure of the liens, assignments and security interests under this Deed of Trust shall be subject to and shall not operate to extinguish any of said Leases as to which such subordination is operative.

# ARTICLE 9
# GENERAL AND MISCELLANEOUS PROVISIONS

Section 9.1  **Debt May be Changed without Affecting this Deed of Trust**. Any of the Debt may be extended, rearranged, renewed, increased or otherwise changed in any way, and any part of the security described in this Deed of Trust or any other security for any part of the Debt may be waived or released without in any way altering or diminishing the force, effect or lien of this Deed of Trust, and the lien, assignment and security interest granted by this Deed of Trust shall continue as a prior lien, assignment and security interest on all of the Property not expressly so released, until the final termination of this Deed of Trust.

Section 9.2  **Security is Cumulative**. No other security now existing or hereafter taken to secure any part of the Debt or the performance of any obligation or liability whatever shall in any manner affect or impair the security given by this Deed of Trust. All security for any part of the Debt and the performance of any obligation or liability shall be taken, considered and held as cumulative.

Section 9.3  **Mortgagor Waives All Stay, Extension, Appraisement and Redemption Rights**. Mortgagor will not at any time insist upon or plead or in any manner whatever claim or take the benefit or advantage of any stay or extension law now or at any time hereafter in force in any locality where the Property or any part thereof may or shall be situated, nor will Mortgagor claim, take or insist on any benefit or advantage from any law now or hereafter in force providing for the valuation or appraisement of the Property or any part thereof before any sale or sales thereof to be made pursuant to any provision of this Deed of Trust, or to decree of any court of competent jurisdiction, nor after any such sale or sales will Mortgagor claim or exercise any right conferred by any law now or at any time hereafter in force to redeem the property so sold or any part of it, and Mortgagor hereby WAIVES all benefit and advantage of any such law or laws and WAIVES the appraisement of the Property or any part of it and covenants that Mortgagor will not hinder, delay or impede the execution of any power in this Deed of Trust granted and delegated to the Trustee or Mortgagee, but that Mortgagor will suffer and permit the execution of every such power as though no such law or laws had been made or enacted.

Section 9.4  **Subrogation to Liens Discharged**. Mortgagor hereby agrees that Mortgagee shall be subrogated to all rights, titles, interests, liens, benefits, remedies, equities, superior title and security interests (the "**Subrogated Liens**") owned, claimed or held as security for any debt or other obligation (the "**Discharged Obligations**") directly or indirectly satisfied, discharged or paid with money or other property advanced by Mortgagee. Irrespective of any formal or informal acknowledgment of partial or complete satisfaction or release of the Discharged Obligations, the Subrogated Liens shall be continued, renewed, extended, brought forward and rearranged as security for the Debt in addition to and cumulative of the lien and security interest of this Deed of Trust. Foreclosure under this Deed of Trust shall constitute foreclosure of the Subrogated Liens.

Section 9.5  **Due on Sale**. Mortgagor agrees that if, without the prior written consent of the Mortgagee, (a) any part of the Property or any interest either in the Property or in the beneficial equity ownership of any Mortgagor which is not a natural person (an "**Equity Interest**") should be directly or indirectly transferred, conveyed or mortgaged, voluntarily or involuntarily, absolutely or as security, or (b) Mortgagor should enter into any contractual arrangement to transfer, convey or mortgage any part of the Property or any interest either in the Property or in an Equity Interest, the Mortgagee shall have the right and option (except only in those circumstances, if any, where the exercise or such right is expressly prohibited by applicable law and such law also precludes Mortgagor from effectively waiving such prohibition) to declare the amounts owed under any of the Credit Documents or the entire amount of the Debt to be due and payable. The Mortgagee shall have such right and option absolutely and irrespective of whether or not the transfer, conveyance or mortgage would or might (i) diminish the value of any security for the Debt, (ii) increase the risk of default under this Deed of Trust, (iii) increase the likelihood of any Mortgagee's having to resort to any security for the Debt after default or (iv) add or remove the liability of any person or entity for payment of the Debt or performance of any covenant or obligation under this Deed of Trust. To exercise such right and option, the Mortgagee shall cause Mortgagee to give written notice to Mortgagor and to the person or entity to whom such property was transferred, conveyed or mortgaged that the amounts due under the Credit Documents or the Debt have been declared due and payable and that demand is made to pay it. If the consent of the Mortgagee to a proposed transfer, conveyance or mortgaging is requested (in addition to the absolute right to refuse to consent to any such transaction) such consent may be conditioned upon satisfaction of any one or more of the following requirements: (1) that the interest rate(s) on all or any part of the Debt be increased to a rate which is then acceptable to the Mortgagee; (2) that a reasonable transfer fee, in an amount determined by the Mortgagee, be paid; (3) that a principal amount deemed appropriate by the Mortgagee be paid against the Debt to reduce to a level which is then acceptable to the Mortgagee the ratio that the outstanding balance of the Debt bears to the value of the Property as determined by the Mortgagee; (4) that Mortgagor and each proposed transferee execute an assumption agreement and such other instruments as the Mortgagee or such counsel for the Mortgagee shall reasonably require and in form and substance satisfactory to the Mortgagee and such counsel; (5) that the proposed transferee's creditworthiness and experience in owning and operating similar properties be demonstrable and proven to the Mortgagee's reasonable satisfaction to be at least as good as Mortgagor's managers' at the time credit was first extended under the Credit Documents; (6) that the liability to Mortgagee and all makers and guarantors of all or any part of the Debt will be confirmed by them in writing to be unaffected and unimpaired by such transfer, conveyance or mortgaging and (7) that any existing or proposed junior mortgagee expressly subordinate to all liens and security interests securing the Debt as to both lien and payment right priority and consent to the proposed transaction in a writing addressed to Mortgagee.

Section 9.6  **Condemnation**. If before final termination of this Deed of Trust, all or a portion of the Property is taken for public or quasi-public purposes, either through eminent domain or condemnation proceedings, by voluntary conveyance under threat of condemnation with Mortgagee's express written consent and joinder or otherwise, Mortgagor hereby agrees that any and all sums of money awarded or allowed as damages, payments in lieu of condemnation awards or otherwise to or for the account of the owner of the Property or any portion of it on account of such taking shall be paid an delivered to Mortgagee, and they are hereby assigned to Mortgagee, and shall be paid directly to Mortgagee. All proceeds of condemnation awards or proceeds of sale in lieu of condemnation with respect to the Property and all judgments, decrees and awards for injury or damage to the Property shall be applied, first, to reimburse Mortgagee or the Trustee all costs and expenses, including reasonable attorneys' fees, incurred in connection with collection of such proceeds and, second, the remainder of said proceeds shall be applied, at the discretion of the Mortgagee, to the payment of the Debt in the order determined by the Mortgagee in their sole discretion, or paid out to repair or restore the Property so affected by such condemnation, injury or damage in the same manner as provided in Section 4.1(h) above. Mortgagor agrees to execute such further assignments of all such proceeds, judgments, decrees and awards as the Mortgagee may request. Mortgagee is hereby authorized, in the name of Mortgagor, to execute and deliver valid acquaintance for, and to appeal from, any such judgment, decree or award. Mortgagee shall not be, in any event or circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any such proceeds, judgments, decrees or awards.

Section 9.7  **Notices**. Except where certified or registered mail notice is required by applicable law, service of any notice, report, demand or other instrument authorized or required to be given or furnished under this Deed of Trust to the Mortgagor or the Mortgagee shall be deemed given or furnished (i) when addressed to the party intended to receive the same, at the address of such party set forth below, and delivered at such address or (ii) three days after the same is deposited in the United States mail, first class certified mail, return receipt requested, postage paid, whether or not the same is actually received by such party:

|  |  |
|---|---|
| Mortgagee/<br>Secured Party: | MDJJ REAL ESTATE, LLC, a Texas Limited Liability Company<br>P.O. Box 220255<br>El Paso, Texas  79913 |

|  | Mortgagor/<br>Debtor: | MELEDRES HOME, LLC, a Texas Limited Liability Company<br>6024 Belmar<br>El Paso, Texas 79912 |
|---|---|---|

Either party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other party, but no such notice of change shall be effective unless and until received by such other party.

Section 9.8 **Article, Section and Exhibit References, Numbers and Headings.** References in this Deed of Trust to Articles, Sections and Exhibits refer to Articles, Sections and Exhibits in and to this Deed of Trust unless otherwise specified. The Article and Section numbers, Exhibit designations and headings used in this Deed of Trust are included for convenience of reference only and shall not be considered in interpreting, applying or enforcing this Deed of Trust.

Section 9.9 **Exhibits Incorporated.** All exhibits, annexes, appendices and schedules referred to any place in the text of this Deed of Trust are hereby incorporated into it at that place in the text, to the same effect as if set out there verbatim.

Section 9.10 **"Including" is not Limiting.** Wherever the term "including" or a similar term is used in this Deed of Trust, it shall be read as if it were written, "including by way of example only and without in any way limiting the generality of the clause or concept referred to."

Section 9.11 **Gender.** The masculine and neuter pronouns used in this Deed of Trust each include the masculine, feminine and neuter genders.

Section 9.12 **Severability.** If any provision of this Deed of Trust is held to be illegal, invalid or unenforceable under present or future laws, the legality, validity and enforceability of the remaining provisions of this Deed of Trust shall not be affected thereby, and this Deed of Trust shall be liberally construed so as to carry out the intent of the parties to it. Each waiver in this Deed of Trust is subject to the overriding and controlling rule that it shall be effective only if and to the extent that (a) it is not prohibited by applicable law and (b) applicable law neither provides for nor allows any material sanctions to be imposed against Mortgagee for having bargained for and obtained it.

Section 9.13 **Any Unsecured Debt is Deemed Paid First.** If any part of the Debt cannot lawfully be secured by this Deed of Trust, or if the lien, assignments and security interest of this Deed of Trust cannot be lawfully enforced to pay any part of the Debt, then and in either such event, at the option of the Mortgagee, all payments on the Debt shall be deemed to have been first applied against that part of the Debt.

Section 9.14 **Payments Returned.** Mortgagor agrees that, if at any time all or any part of any payment previously applied by Mortgagee to the Debt is or must be returned by Mortgagee or recovered from Mortgagee for any reason (including the order of any bankruptcy court), this Deed of Trust shall automatically be reinstated to the same effect as if the prior application had not been made, and, in addition, Mortgagor hereby agrees to indemnify Mortgagee against, and to save and hold Mortgagee harmless from any required return by Mortgagee or recovery from Mortgagee of any such payment because of its being deemed preferential under applicable bankruptcy, receivership or insolvency laws, or for any other reason.

Section 9.15 **Amendments in Writing.** This Deed of Trust shall not be changed orally but shall be changed only by agreement in writing signed by the party against whom such amendment is sought to be enforced. Any waiver or consent with respect to this Deed of Trust shall be effective only in the specific instance and for the specific purpose for which given. No course of dealing between the parties, no usage of trade and no parole or extrinsic evidence of any nature shall be used to supplement or modify any of the terms or provisions of this Deed of Trust.

Section 9.16 **Professional Services.** Mortgagee (by its officers, employees, directors or agents) at any time and from time to time, and at Mortgagor's sole cost and expense (to the extent not prohibited by applicable law), may contract for the services of an appraiser approved by the Mortgagee to perform a written appraisal of the Property (or such parts of it as are designated in Mortgagee's request). Any such appraisal may be performed at any time or times upon reasonable notice to Mortgagor, as long as it does not unreasonably interfere with Mortgagor's use of the Property. Specifically, any such appraiser is authorized to enter upon, and Mortgagor shall allow such appraiser access to, the Property as may be necessary in the opinion of such appraiser to perform its professional services. Mortgagor will also furnish such appraiser such historical and operational information regarding the Property as may be reasonably requested by such appraiser to facilitate preparation of an appraisal and will make available for meetings with such appraiser appropriate personal having knowledge of such matters. Mortgagor will permit Mortgagee, each Mortgagee and their agents, independent contractors, representatives, employees and officers at all reasonable times to go upon, examine, inspect and remain on the Property for any lawful purpose and will furnish to Mortgagee and each Mortgagee on request all pertinent information in regard to the development, operation, use and status of the Property. Promptly upon Mortgagee's or any Mortgagee's request, Mortgagor agrees, at Mortgagor's sole cost and expense (to the extent not prohibited by applicable law) (i) to cause an inspection and written appraisal of the Property (or such parts of it as are designated in such request) to be made by a qualified appraiser approved by the Mortgagee or the applicable Mortgagee; and (ii) to cause to be conducted or prepared any written report, summary, option, inspection, review, survey, audit or other professional service relating to the Property or any operations in connection with it (all as described in such request), including any accounting, architectural, consulting, engineering, design, legal, management, pest control, surveying, toxic or hazardous materials survey, inspection, removal or cleanup work, title abstracting or other technical, managerial or professional service relating to the Property or its operations. Mortgagee or any applicable Mortgagee may elect to deliver any such request orally, by telegram, telex or telefax, by mail or by hand delivery addressed to Mortgagor as provided in this Deed of Trust or by any other legally effective method, and it may be given at any time and from time to time before the complete and final release and discharge of this Deed of Trust. Any amount to be paid under this Paragraph by Mortgagor shall be demand obligation owing by Mortgagor and shall bear interest from the date of expenditure at the Past Due Rate.

Section 9.17 **Venue.** This Deed of Trust is performable in Lincoln County, New Mexico, which shall be a proper place of venue for suit on or in respect of this Deed of Trust. Mortgagor irrevocably agrees that any legal proceeding in respect of this Deed of Trust shall be brought in the district courts of Lincoln County, New Mexico or the United States District Court for the District of New Mexico (collectively, the "**Specified Courts**"). Mortgagor hereby irrevocably submits to the nonexclusive jurisdiction of the state and federal courts of the State of New Mexico. Mortgagor hereby irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to any Credit Document brought in any Specified Court, and hereby further irrevocably waives any claims that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Mortgagor further irrevocably consents to the service of process out of any of the Specified Courts in any such suit, action or proceeding by the mailing of copies thereof by certified mail, return receipt requested, postage prepaid, to Mortgagor at its address as provided in this Deed of Trust or as otherwise provided by New Mexico law. Nothing herein shall affect the right of Mortgagee to commence legal proceedings or otherwise proceed against Mortgagor in any jurisdiction or to serve process in any manner permitted by applicable law. Mortgagor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. THIS DEED OF TRUST SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE APPLICABLE LAWS OF THE STATE OF NEW MEXICO EXCEPT TO THE EXTENT (A) OF PROCEDURAL AND SUBSTANTIVE MATTERS RELATING ONLY TO THE CREATION, PERFECTION AND FORECLOSURE OF LIENS, AND ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE MORTGAGED PROPERTY, WHICH MATTERS SHALL BE GOVERNED BY

THE LAWS OF THE STATE OF NEW MEXICO AND (B) THAT THE LAWS OF THE UNITED STATES OF AMERICA AND ANY RULES, REGULATIONS, OR ORDERS ISSUED OR PROMULGATED THEREUNDER, APPLICABLE TO THE AFFAIRS AND TRANSACTIONS ENTERED INTO BY MORTGAGEE, OTHERWISE PREEMPT NEW MEXICO, IN WHICH EVENT SUCH FEDERAL LAW SHALL CONTROL.

Section 9.18. **Entire Agreement**. This Deed of Trust embodies the entire agreement and understanding between Mortgagor and Mortgagee with respect to its subject matter and supersedes all prior conflicting or inconsistent agreements, consents and understandings relating to such subject matter. Mortgagor acknowledges and agrees that there is no oral agreement between Mortgagor and Mortgagee which has not been incorporated in this Deed of Trust.

Section 9.19. **Limitation on Indemnification Provisions**. In the event, and only in the event, that § 56-7-1 NMSA 1978 (1986 Repl.) is deemed to apply to the indemnification provisions contained in this Deed of Trust, despite this expressed intent that it shall not so apply, then, notwithstanding any provision in this Deed of Trust to the contrary, no indemnification provision in this Deed of Trust shall be construed to indemnify against liability, claims, damages, losses or expenses, including attorney fees arising out of:

(a) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications by the indemnified party, or the agents or employees of the indemnified party; or

(b) the giving of or the failure to give directions or instructions by the indemnified party, or the agents or employees of the indemnified party, where such giving or failure to give directions or instructions is the primary cause of bodily injury to persons or damage to property.

Mortgagor:

MELEDRES HOME, LLC, a Texas Limited Liability Company

By: _____
Name: Benjamin Giron
Title: Manager

STATE OF New Mexico )
COUNTY OF Dona Ana )
 )

This instrument was acknowledged before me on this 18 day of May, 2018, by Benjamin Giron, Manager of MELEDRES HOME, LLC, a Texas Limited Liability Company, a _____, on behalf of said _____.

_____
Notary Public in and for the State of New Mexico

My Commission Expires:
03/08/20

AFTER RECORDING, RETURN TO:

MDJJ REAL ESTATE, LLC
P.O. Box 220255
El Paso, Texas 79913

Attached:
Exhibit A--description of the Real Property
Exhibit B--permitted title exceptions

- 24 -

EXHIBIT "A"

Lots 4 and 5, of LA LOMITA SUBDIVISION, located in the City of Las Cruces, County of Dona Ana, State of New Mexico as shown on Plat thereof recorded on March 16, 1951 as Plat No. 388, records of Dona Ana County.

# EXHIBIT "B"

## Permitted Exceptions

1. Encroachments, overlaps, conflicts in boundary lines, shortages in area, or other matter which would be disclosed by an accurate survey and inspection of the premises.

2. Reservations, conditions and exceptions contained in Patent from the United States of America recorded in Book 30 at page 55, of Deed records;

3. Restrictions recorded May 2, 1951 in Book 26 at pages 156-157; Amended Restrictions recorded July 27, 1951 in Book 26 at pages 264 and 265; Amended Restrictions recorded November 10, 1951 in Book 26 at pages 419-421, records of Dona Ana County, New Mexico. Deleting any portion of said restrictions indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or natural origin to the extent such covenants, conditions or restrictions violate #42 USC 3604 "c".

4. Easement in favor of El Paso Electric Company recorded January 19, 1978 in Book 125, pages 604-605, records of Dona Ana County, New Mexico;

5. Easements, building setback lines and other matters as shown on filed Plat of Subdivision and Dedication thereof; and

6. Taxes for the year 2018 and thereafter.